UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KATHRYN L. WISEMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of the Social Security Administration,<br><br>  Defendant. | CAUSE NO.: 3:20-CV-432-TLS |

**OPINION AND ORDER**

The Plaintiff Kathryn Wiseman seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in the Listings analysis; erred in failing to properly consider medical opinion evidence; mischaracterized evidence; and erred in analyzing her subjective symptoms. For the reasons set forth below, the Court finds that the ALJ erred in evaluating medical opinion evidence, and remand is required for further proceedings.

**PROCEDURAL BACKGROUND**

On March 6, 2017, the Plaintiff filed an application for supplemental security income, alleging disability beginning on June 1, 2013. AR 15, 233, ECF No. 13. The claim was denied initially and on reconsideration. AR 112, 128. The Plaintiff requested a hearing, which was held before the ALJ on April 4, 2019. AR 43–100, 142–44. At the hearing, the Plaintiff amended her alleged onset date to March 6, 2017, the application filing date. AR 15. On May 30, 2019, the ALJ issued a written decision and found the Plaintiff not disabled. AR 15–37. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–6. Thus, the ALJ's decision is the final decision of the

Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On May 30, 2020, the Plaintiff filed her Complaint [ECF No. 1], seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply. ECF Nos. 17, 21, 22.

## THE ALJ'S DECISION

For purposes of supplemental security income, a claimant is "disabled . . . if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since March 6, 2017, the application date and amended alleged onset date. AR 17.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of obesity, right shoulder degenerative joint disease status-post arthroscopic surgery

2

in December 2016, Achilles tendonitis and calcaneal spur, plantar fasciitis, depression, anxiety, and mild intellectual disorder. AR 17.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 21.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand and walk for four hours in an eight-hour workday and can sit for six hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolds but can occasional[ly] climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead with her right arm, as well as frequently perform forward and lateral reaching with this arm. The claimant can learn, understand, remember, and carry out simple work instructions and is able to maintain routine and repetitive work tasks. She should not be required to engage in customer service work, should not be required to work with money, and she can engage in simple math calculations only, as well as simple reading and writing [] at the early education level and she can learn predominantly by demonstration. The claimant can engage in self-paced work with end of day goals but no high or fast-paced production work. She can occasionally work with co-workers but no teamwork or tandem work. She can adequately sustain the required concentration, persistence,

and pace required for the work tasks in two-hour increments throughout the typical workday.

AR 25.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is capable of performing her past relevant work as a school bus monitor. AR 33.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ also found that the Plaintiff is capable of performing other jobs in the national economy of packer, assembler, and sorter. AR 35–36. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's

decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff raises multiple arguments, but the Court need only address one that compels remand. The ALJ erred in failing to properly analyze medical opinion evidence related to Plaintiff's mental impairments.

A.      **Medical Opinion Evidence**

The Plaintiff asserts that the ALJ failed to properly analyze the opinion of her treating psychologist, Dr. Julia Kocal. Specifically, the Plaintiff asserts that the ALJ cherry-picked and mischaracterized evidence in the record and improperly considered the supportability and consistency of Dr. Kocal's opinion.

Dr. Kocal provided an opinion in February 2019. AR 1659–60. Dr. Kocal opined that the Plaintiff is unable to sustain attention, work independently, understand complex instructions, or interact with the public. AR 1659. She also opined that the Plaintiff is unable to behave in an emotionally stable manner, relate predicably in a social manner, or demonstrate reliability due to panic symptoms. *Id.* Dr. Kocal stated that the Plaintiff socially isolates and is incoherent when panicked. *Id.* Dr. Kocal opined that the Plaintiff cannot make simple work-related decisions, respond appropriately to usual work situations, deal with changes in a routine work setting, respond appropriately to supervisors, or respond appropriately with co-workers. *Id.* Dr. Kocal supported this by stating that the Plaintiff becomes easily agitated and anxious and that she has a dependent personality that would interfere with decision making. *Id.* Dr. Kocal stated that the Plaintiff "would <u>not</u> make <u>any</u> decisions independently [because she would become] anxious it would be wrong, would become tearful, confused, . . . [and] probably leave." *Id.* Finally, Dr. Kocal opined that the Plaintiff would likely be off task 25% or more of the day and would miss four or more days of work per month and that the Plaintiff is incapable of sustaining work on a continuing basis due to her symptoms. AR 1660.

The ALJ afforded Dr. Kocal's opinion little weight. AR 32. The ALJ found that her opinions "were not specifically explained, especially since there is little evidence suggesting that the nature of the claimant's symptoms were such that she would clearly miss this amount of

work." *Id.* While the ALJ acknowledged that the Plaintiff has demonstrated social and cognitive difficulties, she found that Dr. Kocal's opinions related to off-task behavior and absence from work are not supported by treatment notes or the Plaintiff's testimony. AR 32–33. The ALJ also found that Dr. Kocal's opinion that the Plaintiff cannot make simple-work related decisions was not supported by the Plaintiff's daily activities. AR 33. Specifically, the ALJ noted that the Plaintiff is capable of knitting, crocheting, taking care of her sister's children, and completing household chores. *Id.* The ALJ also noted that the Plaintiff was able to work despite "similar or even worsening symptoms," but her work was "well before the application date and thus, does not fully reflect the claimant's current level of functioning." *Id.*

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. § 416.927(c). The treating physician rule, applicable in this case,[1] provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *see Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2); *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020)). If the treating physician's opinion is not given controlling weight, the Commissioner must apply the factors set forth in the regulations to determine what other weight to give the opinion. 20 C.F.R. § 416.927(c)(2); *see Karr*, 989 F.3d at 512 ("[T]he ALJ failed to expressly analyze Dr. Canavati's statement within the multifactor framework delineated in 20 C.F.R. § 404.1527(c)(2).

---

[1] On January 18, 2017, the Commissioner published new regulations, "Revisions to Rules Regarding the Evaluation of Medical Evidence," which addressed 20 C.F.R. § 416.927. However, the new regulations only apply to claims filed on or after March 27, 2017.

The ALJ should have done so." (citing *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018))).

The factors the ALJ must consider are: whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)–(6). The Commissioner "must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1127); *Reinaas*, 953 F.3d at 465 (noting that the ALJ concluded that the treating physician's opinion did not deserve controlling weight because it was based only on the claimant's subjective report of symptoms and because it was "inconsistent" with the record but finding that the ALJ failed to adequately support the conclusions (citing *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016)); *see also Smith v. Berryhill*, No. 3:17-cv-261, 2018 WL 4357129, at *6 (N.D. Ind. Sept. 13, 2018) (stating that the Commissioner failed to "identify specific inconsistencies" to allow the court to determine how the opinion is inconsistent).

The ALJ mischaracterized the Plaintiff's ability to complete daily activities, specifically regarding her ability to knit, crochet, take care of her sister's children, and doing household chores. The Plaintiff testified that her knitting and crocheting consisted of doing the same pattern "over and over," and she did not learn new stitches. AR 76. The ALJ failed to explain how her ability to knit or crochet using simple, memorized stitches contradicts Dr. Kocal's opinion that that the Plaintiff cannot make even simple work-related decisions. Similarly, the ALJ failed to

explain how the Plaintiff's statements regarding her ability to "take care of her sister's children" contradicts Dr. Kocal's opinion. AR 33. The ALJ asked the Plaintiff at the hearing whether she ever babysat her sister's children, who at the time of the hearing were somewhere between the ages of 9 and 14. AR 76–77. The ALJ noted that the children were school aged, but asked if the Plaintiff had to babysit them "a few years ago." AR 77. Plaintiff testified that she would occasionally babysit, but only for increments of about ten minutes. *Id.* There is no indication that the Plaintiff continued to watch her sister's children after the alleged onset date, and she testified that she only watched them for ten minutes at a time. The ALJ failed to explain how this is inconsistent with Dr. Kocal's opinion.

The ALJ also implied that the Plaintiff was capable of performing a full-time job in the past despite "similar or even worsening symptoms." AR 33. The ALJ noted this was "well before the application date and thus, does not fully reflect the claimant's current level of functioning." *Id.* However, the ALJ's statement still heavily implies that the ALJ considered the Plaintiff's prior work in discrediting Dr. Kocal's opinions. The ALJ did not cite any medical evidence to support the finding that the Plaintiff was experiencing similar or worsening symptoms during her prior work. Despite the ALJ's assertion that the Plaintiff's mental impairments caused similar or worsening symptoms prior to her alleged onset date, the medical record indicates that her symptoms have worsened since 2013, when she last worked. In September 2016, the Plaintiff's primary care physician noted that her chronic anxiety was worsening despite medication, and she was tearful during the exam. AR 712, 714. Her physician increased her medication and referred her to Dr. Kocal for psychiatric care. AR 715. There is no indication that mental health symptoms during the time she worked were either worse or similar to their severity after her alleged onset date.

9

Similarly, in discussing the Plaintiff's subjective symptoms, the ALJ noted that the Plaintiff was able to take care of "many of the daily household needs" when she was married, and found that "the record does not indicate that her impairments significantly worsened or that there were any specific intervening events that would have prompted the claimant to require new or additional supports beyond her prior activities of daily living." AR 30. The ALJ then acknowledged that the Plaintiff's husband passed away, which caused financial difficulties. Yet the ALJ failed to acknowledge that the husband's passing was a "specific intervening event" that caused worsening mental health symptoms, triggering the Plaintiff's primary care physician to refer her to Dr. Kocal for psychiatric treatment. AR 715. The ALJ impermissibly relied on the Plaintiff's ability to complete daily activities prior to her alleged onset date and does not acknowledge her worsening symptoms after her alleged onset date in discussing her mental impairment symptoms. The ALJ repeatedly cherry-picked and mischaracterized evidence in the medical record, and this error requires remand.

The ALJ also failed to properly consider the supportability and consistency of Dr. Kocal's opinion with her own treatment notes or the medical record as a whole. The ALJ found that Dr. Kocal's opinions regarding the Plaintiff's off-task behavior and potential absences were not supported by her own treatment notes. AR 32. The ALJ also broadly found that "the longitudinal record does not fully support the extent of the limitations assessed." AR 33.

Dr. Kocal's treatment notes regularly noted dysphoric or sad mood and constricted affect from April 2017 through March 2019. AR 728–29, 1211, 1268, 1347, 1351, 1356, 1361, 1370, 1375, 1529, 1531–32, 1534. The Plaintiff was frequently tearful and anxious. AR 1351, 1370, 1529, 1532. Her judgment and insight were regularly noted to be impaired, and even in treatment notes that indicated improvement, her judgment and insight were still labeled "clinically

10

significant." *Id.* 1361, 1370, 1529, 1532, 1534. In September 2017, Dr. Kocal noted that the Plaintiff was socially isolating due to her panic and agoraphobia. AR 1371. In February 2018, a treatment note from Dr. Kocal stated that the Plaintiff was socially withdrawn due to panic symptoms. AR 1268. Dr. Kocal noted in May 2018 that the Plaintiff retreats to her room when agitated and does not socialize with family members, and, in September 2018, Dr. Kocal stated that the Plaintiff tends to be socially withdrawn due to episodic and situational panic. AR 1211, 1534. Dr. Kocal also noted in May 2018 that the Plaintiff was fully dependent on her sister for a structured living environment. AR 1211.

The treatment notes from Dr. Kocal also specifically indicated that the Plaintiff's anxiety symptoms cause difficulty in concentration and focus. AR 729. In June 2017, the treatment notes indicated social anxiety and feeling overwhelmed with noise and people. AR 726–27. Treatment notes from September 2017 indicated that her mental health symptoms were severe enough that at times she is unable to get out of bed. AR 1370. Dr. Kocal's treatment notes at least in part support her opinion that the Plaintiff would be regularly absent from work and struggle with concentration due to her mental health impairments. The ALJ failed to discuss these treatment notes in any meaningful way.

Moreover, the Plaintiff was confused during the hearing, and it was noted that the Plaintiff was "very emotional and anxious" while filling out her disability paperwork. AR 259. "She started crying and couldn't stop." *Id.* The Plaintiff frequently apologized and struggled to answer questions during the hearing. AR 49–51. She also struggled with remembering the question asked of her and needed questions repeated. AR 52–53. The Plaintiff seemed to get overwhelmed during the hearing, and the ALJ and her attorney prompted her to take a deep breath and offered to pour her a glass of water. AR 57. The Plaintiff also testified to having panic

attacks multiple times per day and that she self-isolates due to her panic attacks. AR 53–55. The ALJ did not discuss or analyze the consistency of the Plaintiff's actions during the hearing with Dr. Kocal's opinion, despite witnessing the Plaintiff's struggles with answering questions. The ALJ failed to consider the evidence in support of Dr. Kocal's opinion and impermissibly cherry-picked evidence that supported the decision without proper consideration of evidence to the contrary. The ALJ may not cherry pick evidence from "mixed results to support a denial of benefits." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Similarly, the ALJ impermissibly cherry-picked evidence, particularly related to Dr. Kocal's treatment notes, in analyzing the Plaintiff's subjective symptoms. The ALJ found that there was "documented improvement, some significant, with the various treatments she received," specifically noting treatment notes from Dr. Kocal regarding improvement. AR 28. The ALJ particularly noted treatment notes where the Plaintiff demonstrated "significant improvement in judgment and insight" and improved mood. AR 28. The ALJ repeatedly cites to a single treatment note from January 2018, where the Plaintiff's mood, judgment, and insight were all improved, and her depression was noted to be decreased. AR 1347. However, the Plaintiff's mood was dysphoric and her affect restricted. *Id.* Moreover, Dr. Kocal noted twice in 2018 that, even when the Plaintiff's judgment and insight were greatly improved, they were still clinically significant. AR 1532, 1534. The ALJ improperly relied on the indication of improvement without considering that the Plaintiff's judgment and insight were still impaired enough to be clinically significant.

The Plaintiff's mood and depression symptoms varied greatly from session to session, but the ALJ only discussed the Plaintiff's sessions noting improvement. While the Plaintiff's mood was improved in January 2018, by February she was noted to be socially withdrawn due to panic

symptoms. AR 1268. In May 2018, Dr. Kocal noted that although the Plaintiff's insight and judgment continued to improve, she is fully dependent on her sister for a structured living environment, and she retreats to her room when agitated and does not socialize with her family members. AR 1211. By September, her affect was tearful, and she was again noted to be socially withdrawn due to episodic and situational panic. AR 1534. In November 2018, her affect was again tearful. AR 1532. In March 2019, her mood was mildly dysphoric, her affect was tearful, and her judgment and insight were noted to be impaired secondary to her developmental disability. AR 1529.

Improvement is relevant only to the extent that the improvement restores the Plaintiff's capacity to engage in substantial gainful activity. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."). The treatment records repeatedly indicate that, despite significant improvement, the Plaintiff's judgment and insight remain "clinically significant," and her mood and affect continue to fluctuate. AR 1211, 1268, 1351, 1532, 1534. The ALJ failed to discuss or analyze the treatment notes indicating the Plaintiff's continued mental health struggles and instead relied on a few treatment notes indicating improvement. "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 739. The ALJ has not provided a reasonable analysis of how this improvement contradicts either the Plaintiff's subjective symptoms or Dr. Kocal's opinion. This is impermissibly cherry-picking and requires remand.

**B.     Other Arguments**

The Plaintiff makes several other arguments regarding her RFC, the Listings analysis, and subjective symptoms. However, since remand is required due to the ALJ's errors in analyzing medical opinions, these issues need not be addressed at this time. The Plaintiff can address her other concerns on remand.

**C.     Award of Benefits**

Finally, the Plaintiff asks the Court to reverse and remand for an award of benefits, or, in the alternative, for a new hearing and decision. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, the Court cannot say that an immediate award of benefits is appropriate in this case.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 17] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on August 17, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT